UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

    Plaintiff,

v.

DAVID BELL,

    Defendant,
_____/

CASE NO.: 00-6309-CR-SEITZ

### DEFENDANT'S RESPONSE TO THE PRESENTENCE INVESTIGATION REPORT

COMES NOW the Defendant, David Bell, by and through his undersigned attorney, and respectfully files the following Response and Request for Amendments to the Presentence Investigation Report, and would specifically state unto this court the following:

1. Counsel received the revised Presentence Investigation Report on March 15, 2002.

2. Objections and comments are due by March 27, 2002. This Response is being filed on March 26, 2002.

3. Alias - page four of the Report: It should be noted that all aliases revolve around Defendant David Bell's participation in illegal activity occurring in 1988, when Mr. Bell was eighteen (18) years old as detailed in paragraph ninety-four (94).

4. Paragraph thirty-three (33): At no time during Defendant's employment at Gateway Transportation, Inc. in 1999 or thereafter was he involved in the theft of goods from shipments and giving said items to Mamone for resale. However, in December 2000, after Gateway Transportation, Inc. was closed and the defendant was employed by First Choice Carriers, Inc., allegations of theft occurred involving the Defendant,

      John Mamone and others.

5. Paragraph forty-three (43): While Mr. Bell concedes that Mr. Polito was struck, it is to the best of his knowledge and belief that Mr. Polito did not receive any bodily injury.

6. Paragraph sixty-nine (69): Mamone did not borrow $175,000.00 from Gateway. In December, 1998 Bank Atlantic, without notice or permission from David Bell, debited $175,000.00 from the operating account of Gateway Transportation. Bank Atlantic used this money to cover an overdraft of the account for Check Cashing Unlimited. It was shown as a loan on the books since Mamone was ultimately responsible for the Check Cashing Store. In March of 2000 the money was paid back to Gateway by Mamone's company JM & Sons from proceeds derived from checks cashed for Chemical Trust. Also, it is David Cavalo and not David Bell working in a foreign currency room in Hollywood, Florida and it was David Cavalo who eventually worked in the foreign currency room in Boca Raton, Florida.

7. Paragraph seventy-one (71): Defendant objects to the level 24 calculation as explained in paragraph 11.

8. Paragraph seventy-six (76): Defendant objects to level 24 as explained in following paragraphs.

9. Paragraph seventy-eight (78): Defendant objects to the two (2) point addition for bodily injury to the victim Al Polito.

10. Paragraph eighty-two (82): For reasons above and following Defendant objects to the adjusted offense level of 22.

11. Paragraph eighty-three (83), eighty-four (84), eighty-seven (87) and eighty-nine (89): The Defendant objects for the following reasons. The Presentence Investigation Report utilizes 2S1.1(a)(1) of the guidelines thereby causing a 4-level increase under the fraud section due to the fraud involving more than 50 victims. Defendant respectfully disagrees with this assertion. If the number of victims can be determined, and the defendant does not believe that they could be so determined, he believes that the number of victims would be fewer than 50. 2S1.1(a)(1) refers to 1B1.3(a)(1)(A) (relevant conduct). Said section defines relevant conduct as " all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or wilfully caused by the defendant." Mr. Bell is responsible for the $175,000.00 that was in the Gateway operating account as explained in paragraph 6 of this Response, but is not responsible for all other funds stolen involving the Chemical Trust fraudulent investment scheme. For Mr. Bell to be responsible for all stolen funds the relevant conduct would fall under 1B1.3(a)(1)(B) (jointly undertaken criminal activity). 2S1.1(a)(1) specifically designates 1B1.3(a)(1)(A) and does not specify 1B1.3(a)(1)(B). Therefore, Mr. Bell's relevant conduct is limited to the $ 175,000.00 and not for all the fraudulent funds passing through Chemical Trust. Again, the number of victims involved in the theft of $ 175,000.00 (Chemical Trust-Gateway) and $300,000.00 (Rubbos) would be fewer than 50. If the number of victims is between 10-50 then only a 2-level increase would be appropriate. Mr. Bell respectfully suggests that the actual number of victims cannot be accurately determined. If that is the case then 2S1.1(a)(2) applies. Utilizing this section, the

Defendant would be at offense level 22 as is outlined in the plea agreement and in paragraph 150 of the Presentence Investigation Report.

12. Paragraph ninety-one (91): In May of 2001 the defendant disassociated himself entirely from John Mamone and anyone affiliated with him including John O'Sullivan. This is corroborated in the recorded conversations on July 23, 2001, where Adam Cougill and John O'Sullivan are talking about David Bell separating himself from John Mamone and John O'Sullivan. On August 17, 2001, when a Second Superseding Indictment was returned, John Mamone, John O'Sullivan and David Bell were arrested. Immediately following the arrest plea negotiations took place between Jeff Harris and Mr. Brian McCormick. A debriefing was scheduled for the beginning of September. Due to September 11th the meeting had to be rescheduled. The meeting took place on October 10, 2001. The defendant was debriefed and pursuant to 3E1.1(b) the defendant assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

 (1) timely providing complete information to the government concerning his own involvement; or

 (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate resources efficiently.

The defendant has clearly demonstrated his acceptance of responsibility (refer to 3E1.1 Application Notes 1. (a), (b), (h). In 3E1.1 application note 3 states " entry of

a plea of guilty prior to commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under 1B1.3 (Relevant Conduct) will constitute significant evidence of acceptance of responsibility for the purpose of subsection (a)...." The defendant has demonstrated his remorse as well as his guilt for the crimes he has committed. The weight of the bond violation, since it occurred 9 months prior to the return of the second superseding indictment is minimal compared to his truthfulness and timeliness of this guilty plea immediately following the second superseding indictment and allowing for the court to efficiently allocate its resources. The defendant was placed on bond on October 27, 2001. Since being placed on bond he has followed all the guidelines which include telephoning daily, reporting in person once per week and adhering to a 10pm to 6am curfew. He has maintained gainful employment the entire time he has been on bond and had volunteered to sell the house he and his wife own together and forfeit one-half the proceeds towards restitution. The defendant is deserving of a 3 point reduction for Acceptance of Responsibility for his truthful and timely cooperation with the government. In regard to the second superseding indictment, the defendant's cooperation and plea to this indictment saved court resources and government time preparing for trial.

13. Paragraph ninety-two: The offense level should be 21 as outlined in the plea agreement and discussed in paragraph 150 of the Presentence Investigation Report.

14. Paragraph ninety-eight (98): While a juvenile the defendant was charged with a

5

Petition of Delinquency and was acquitted.

15. Paragraph one hundred and twenty-five (125): Mr. Bell's wife's name is Stacey Bell as indicated earlier in the Report. Mr. Bell has two (2) checking accounts with Bank of America and not Bank Atlantic. The second account at Bank of America is in the name of Cargo Transportation Services, Inc., with wife Stacey Bell as president and signator on the account. Mr. Bell agrees that a great majority if not all disbursements in Stacey Bell's personal account at Bank of America were for household expenses, however, this is not true for the business account.

16. Paragraph one hundred and twenty-nine (129): A person in the business of buying foreclosures by the name of Jeff Rose has agreed to purchase the Bells' home thereby obviating the need for foreclosure. Mr. Rose has agreed to pay $799,000.00 for the home with the Bells holding a second mortgage in the amount of $159,000.00. Once Mr. Rose sells the home, the second mortgage will be assigned to him by the Bells and Mr. Rose will retain all proceeds from the sale as profit. The actual sale price of the house is $639,200.00 (evidenced by the agreement to sell attached hereto). The net proceeds from this transaction will be approximately $20,00.00 thereby benefiting Mr. Bell $10,000.00 and not $93,406.00.

WHEREFORE, the undersigned counsel respectfully prays for an amendment to the Presentence Investigation Report to reflect the above comments.

I HEREBY CERTIFY a copy of this foregoing has been furnished this 26 day of March, 2002, to the U.S. District Clerk of the Court, Federal Courthouse Square, 301 North Miami Avenue, Miami, Florida 33128, Brian McCormick, Esquire, and Diane Fernandez, Esquire, Assistant United States Attorneys, 500 East Broward Boulevard, Suite 700, Fort Lauderdale, Florida 33394 and Donna Wilmont, United States Probation Officer, 299 East Broward Boulevard, Room 409, Fort Lauderdale, Florida 33301.

JEFFREY M. HARRIS, P.A.
One East Broward Boulevard
Suite 925 - SouthTrust Tower
Fort Lauderdale, Florida 33301
FBN: 195981
(954) 522-7000

JEFFREY M. HARRIS

Mar 14 02 03:18p   John J. Jerue Transport   954-473-8463   p.1

...  ...  ... ... ...   ...  mortgageforce   305668  9   p.2

RECEIVED MAR 1 4 2002

Form A120                    **AGREEMENT TO SELL REAL ESTATE**

DAVID BELL AND STACEY BELL _____ Seller(s), and

LISA ROSE AND JEFFREY ROSE _____ Buyer,
hereby agree that

The Seller shall sell and the Buyer shall buy the following described property UPON THE TERMS AND CONDITIONS HEREINAFTER SET FORTH, which shall include the STANDARDS FOR REAL ESTATE TRANSACTIONS set forth within this contract.

1. LEGAL DESCRIPTION of real estate located: 7705 ANDES LANE, PARKLAND, FL 33067-2300, PARKLAND LAKES P.U.D 102-44 B LOT 12 BLK 3.

2. PURCHASE PRICE                                    $799,000.00
   (a.) Deposit to be held by the seller              $1,000.00
   (b.) Approximate principal balance of first mortgage to which conveyance shall be subject, if any,
        Mortgage holder                               $638,200.00
   (c.) Seller hold second                            $159,800.00
   (d.) Additional Deposit                            $
   (e.) Due at closing 10%                            $    00.00

                    TOTAL                             $799,000.00

3. PRORATIONS: Taxes, insurance, interest, rent and other expenses and revenue of said property shall be prorated as of the date of closing.

4. RESTRICTIONS, EASEMENTS, LIMITATIONS: Buyer shall take title subject to : (a) Zoning, restrictions, prohibitions and requirements imposed by governmental authority, (b) Restrictions and matters appearing on the plat or common to the subdivision, (c) Public utility easements of record, provided said easements are located on the side or rear lines of the property, (d) Taxes for year of closing, assumed mortgages, and purchase money mortgages, if any, (e) Other:

5. DEFAULT BY BUYER: If Buyer fails to perform any of the covenants of this contract, all money paid pursuant to this contract by Buyer as aforesaid shall be retained by or for the account of the Seller as consideration for the execution of this contract and as agreed liquidated damages and in full settlement of any claims for damages.

6. DEFAULT BY SELLER: If the Seller fails to perform any of the covenants of this contract, the aforesaid money paid by the buyer, at the option of the Buyer, shall be returned to the Buyer on demand; or the Buyer shall have only the right of specific performance.

7. TERMITE INSPECTION: At least 15 days before closing, Buyer at Buyer's expense, shall have the right to obtain a written report from a licensed exterminator stating that there is no evidence of live termite or other wood boring insect infestation on said property nor substantial damage from prior infestation on said property. If there is such evidence, Seller shall pay up to (1.5%) percent of the purchase price for the treatment required to remedy such infestation, including repairing and replacing portions of said improvements which have been damaged; but if the costs for such treatment or repairs exceed (1.5%) percent of the purchase price, Buyer may elect to pay such excess. If Buyer elects not to pay, Seller may pay the excess or cancel the contract.

8. ROOF INSPECTION: At least 15 days before closing, Buyer, at Buyer's expense, shall have the right to obtain a written report from a licensed roofer stating that the roof is in a watertight condition. In the event repairs are required either to correct leaks or to replace damage to facia or soffit, Seller shall pay up to (1.5%) percent of the purchase price for said repairs which shall be performed by a licensed roofing contractor; but if the costs for such repairs exceed (1.5%) percent of the purchase price, Buyer may elect to pay such excess. If Buyer elects not to pay, Seller may pay the excess or cancel the contract.

9. OTHER INSPECTIONS: At least 15 days before closing, Buyer or his agent may inspect all appliances, air conditioning and heating systems, electrical systems, plumbing, machinery, sprinklers and pool system included in the sale. Seller shall pay for repairs necessary to place such items in working order at the time of closing. Within 48 hours before closing, Buyer shall be entitled, upon reasonable notice to Seller, to inspect the premises to determine that said items are in working order. All items of personal property included in the sale shall be transferred by Bill of Sale with warranty of title.

10. MECHANICS LIENS: Seller shall furnish to Buyer an affidavit that there have been no improvements to the subject property for 90 days immediately preceding the date of closing, and no financing statements, claims of lien or waivers of all mechanics liens as executed by general contractors, subcontractors, suppliers and materialmen, in addition to the seller's lien affidavit, setting forth the names of all general contractors, subcontractors, suppliers and materialmen and reciting that all bills for work to the subject property which could serve as basis for mechanics liens have been paid or will be paid at closing.

11. PLACE OF CLOSING: Closing shall be held at the office of the Seller's attorney or as otherwise agreed upon.

12. TIME IS OF THE ESSENCE: Time is of the essence of this Sale and Purchase Agreement.

13. DOCUMENTS FOR CLOSING: Seller's attorney shall prepare deed, note, mortgage, Seller's affidavit, any corrective instruments required for perfecting the title, and closing statement and submit copies of same to Buyer's attorney, and copy of closing statement to the broker, at least two days prior to scheduled closing date. Otherwise Buyer's attorney will prepared Seller's documents at seller's cost.

14. EXPENSES: State documentary stamps required on the instrument of conveyance and the cost of recording any corrective instruments shall be paid by the Seller. Documentary stamps to be affixed to the note secured by the purchase money mortgage, intangible tax on the mortgage, and the cost of recording the deed and purchasing money mortgage shall be paid by the Buyer.

15. RISK OF LOSS: If the improvements are damaged by fire or casualty before delivery of the deed and can be restored to substantially the same condition as now within a period of 60 days thereafter, Seller shall so restore the improvements and the closing date and date of delivery of possession hereinbefore provided shall be extended accordingly. If seller fails to do so, the Buyer shall have the option of (1) taking the property as is, together with insurance proceeds, if any, or (2) canceling the contract, and all deposits shall be forthwith returned to the Buyer and all parties shall be released of any and all obligations and liability.

16. MAINTENANCE: Between the date of the contract and the date of closing, the property, including lawn, shrubbery and pool, if any, shall be maintained by the Seller in the condition as it existed as of the date of the contract, ordinary wear and tear excepted.

17. CLOSING DATE: This contract shall be closed and the deed and possession shall be delivered on or before the 30th OF MARCH, 2002, unless extended by other provisions of this contract.

18. TYPEWRITTEN OR HANDWRITTEN PROVISIONS: Typewritten or handwritten provisions inserted in this form shall control all printed provisions in conflict therewith.

19. OTHER AGREEMENTS: No agreements or representations, unless incorporated in this contract, shall be binding upon any of the parties.

20. SPECIAL CLAUSES:

Sellers agree to pay ($25,000.00) toward buyer's closing cost.

See attached Lease Addendum as this transaction is intended to be a sale and leaseback between the parties and the terms of the Lease are an integral and dependent part of this transaction. The Lease agreement shall survive the closing and be binding upon the parties hereto, their successors, assigns, purchasers, agents, representatives and transferees.

WITNESSED BY:

_____  _____    Buyer _Lisa N. Rose_ 3-14-02
Witness                  Date           LISA ROSE       Date

                                        Buyer _____ 3/14/02
                                              JEFFREY ROSE   Date

_____  _____    Seller _____ 3-14-02
Witness                  Date           DAVID BELL      Date

                                        Seller _Stacey Bell_ 3-14-02
                                               STACEY BELL   Date

## POSITION OF PARTIES WITH
## RESPECT TO SENTENCING FACTORS

|                              |                          |
|------------------------------|--------------------------|
| RE:                          | David Bell               |
| SD/FL PACTS No:              | 16918                    |
| DOCKET NO:                   | 00-6309-CR-Seitz(s)(s)   |
| OBJECTIONS DUE BY:           | March 27, 2002           |
| DATE AVAILABLE for DISCLOSURE: | March 14, 2002         |

---

I have read the presentence investigation completed by the United States Probation Office.

_____ There are no disputed facts.

__X__ There are unresolved factual disputes which are attached.

_[signature]_      3-26-02
(Defendant)      (Date)

_[signature]_      3-26-02      Ft. Lauderdale, Florida
(Defense Attorney)      (Date)      (Location)
Jeffrey Mark Harris

     Ft. Lauderdale, Florida
(Assistant U.S. Attorney)      (Date)      (Location)
J. Brian McCormick

Return To: Donna R. Wilmot
U. S. Probation Officer
Federal Courthouse Building
299 East Broward Blvd., Room 409
Ft. Lauderdale, FL 33301-1865